UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

                             v.

MARTELLUS JONES, a/k/a Fat Bob, a/k/a Marty
MAURICE FISHER, a/k/a Reese,
EMILIO GALARZA, a/k/a Boongo,
IRVING MITCHELL, a/k/a Gotti,
KAREN PIERCE, a/k/a Karen Burns, a/k/a Momma-Love,
SHAUNCEY GALARZA,
DANIELE LIDDLE,
EUGENE DAVIS,

                            Defendants.

**REPORT**
**and**
**RECOMMENDATION**
------------------------------
**DECISION**
**and**
**ORDER**

**05-CR-173A**

APPEARANCES:          TERRANCE P. FLYNN
                         UNITED STATES ATTORNEY
                         Attorney for the Government
                         JOEL L. VIOLANTI, of Counsel
                         Federal Centre
                         138 Delaware Avenue
                         Buffalo, New York 14202

                         JOHN J. MOLLOY, ESQ.
                         Attorney for Defendant Maurice Fisher
                         4268 Seneca Street
                         West Seneca, New York 14224

                         EOANNOU, LANA & D'AMICO
                         Attorneys for Defendant Maurice Fisher
                         THOMAS J. EOANNOU, of Counsel
                         484 Delaware Avenue
                         Buffalo, New York 14202

                         ANGELO MUSITANO, ESQ.
                         Attorney for Defendant Emilio Galarza
                         1520 Pine Avenue
                         P.O. Box 2127 NMS
                         Niagara Falls, New York 14301

KAREN A. KORKUC, ESQ.
Attorney for Defendant Irving Mitchell
112 Franklin Street
Buffalo, New York 14202

JOHN PATRICK PIERI, ESQ.
Attorney for Defendant Karen Pierce
Cornell Mansion
484 Delaware Avenue
Buffalo, New York 14202

MATTHEW P. PYNN, P.C.
Attorneys for Defendant Shauncey Galarza
MATTHEW P. PYNN, of Counsel
272 East Avenue
Lockport, New York 14094

MICHAEL J. STACHOWSKI, ESQ.
Attorney for Defendant Daniele Liddle
2025 Clinton Street
Buffalo, New York 14206

MICHAEL G. O'ROURKE, ESQ.
Attorney for Defendant Eugene Davis
112 Franklin Street
Buffalo, New York 14202-3401

## JURISDICTION

This case was referred to the undersigned by the Hon. Richard J. Arcara on

March 9, 2006 for all pretrial matters, including report and recommendation on

dispositive motions.  (Doc. No. 66).  The matter is presently before the court for a report

and recommendation on Defendants' Motions ("Defendants' Motions") seeking both

dispositive and nondispositive relief, [1] and on the Government's motion filed March 20,

---

[1]  Although Defendants' motions seek both dispositive and nondispositive relief, the court
addresses all issues in this combined Report and Recommendation and Decision and Order in the interest
of simplicity.

2006 (Doc. No. 67) ("Government Response"), seeking reciprocal discovery.

## BACKGROUND

Defendant Martellus Jones and seven others, including co-Defendants Maurice
Fisher, Emilio Galarza, Irving Mitchell, Karen Pierce, Shauncey Galarza, Daniele Liddle
and Eugene Davis, were indicted in a four count indictment on July 7, 2005, charging
violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), 843(b), 846 and 848(a).
(Doc. No. 1) ("the Indictment").  Specifically, Defendant Martellus Jones is alone
charged in Count 1 of the Indictment with knowingly, willfully, intentionally and unlawfully
engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848(a) ("Count 1"
or "the CCE Count").  Defendants Martellus Jones, Maurice Fisher, Emilio Galarza,
Irving Mitchell, Karen Pierce, Shauncey Galarza, Daniele Liddle and Eugene Davis were
charged with conspiracy to possess with intent to distribute, and to distribute, 50 grams
or more of cocaine in violation of 21 U.S.C. § 846 ("Count 2" or "the Conspiracy Count").
Defendant Martellus Jones was alone charged with knowingly, intentionally and
unlawfully possessing with intent to distribute and distribute 50 grams or more of
cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) ("Count 3").  Defendant
Emilio Galarza was alone charged with knowingly, intentionally and unlawfully
possessing with intent to distribute and distribute 5 grams or more of cocaine in violation
of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) ("Count 4").

Defendants' Motions include motions filed by Karen Pierce on March 2, 2006
(Doc. No. 61) ("Pieri Affirmation"), Martellus Jones on March 3, 2006 (Doc. No. 63)
("Molloy Affirmation"), Maurice Fisher on March 6, 2006 (Doc. No. 64) ("Eoannou

Affirmation"), Shauncey Galarza on March 7, 2006 (Doc. No. 65) ("Pynn Affirmation").

The Government filed its Response to Omnibus Motion in opposition to Defendants'

motions on March 20, 2006 (Doc. No. 67) ("Government Response").  At oral argument,

conducted on April 4, 2006, the court granted Defendant Pierce 10 days to file a

supplemental motion challenging the search warrant for 204 Bird Avenue, and ten days

for the Government to respond. [2]  (Doc. No. 68).  Subsequently, Defendant Pierce filed

a motion to suppress (Doc. No. 69) ("Pieri Affirmation II") on April 10, 2006.  The

Government filed the Government's Response to Defendant's Motion to Suppress (Doc.

No. 70) ("Government Response to Motion to Suppress") on April 20, 2006.

Defendants' Motions include requests for suppression of Title III evidence,

suppression of evidence obtained pursuant to various search warrants issued on or

about July 11, 2005, severance, an audibility hearing and disclosure of informant

identities.  As indicated, background, supra, at 4 n.2, Defendants submitted certain

requests for non-dispositive relief in their respective motion papers which were

determined at oral argument.

At oral argument, the court directed all counsel to address any remaining issues

pursuant to Fed.R.Crim.P. 16 ("Rule 16") not previously resolved in a prior court

proceeding or as a result of the extensive discovery voluntarily provided by the

---

[2] At oral argument, the court entered an oral order regarding non-dispositive motions as to Defendants Jones,  Fisher, Pierce and Galarza DISMISSING the motions as moot, in part, GRANTING them, in part, DENYING them, in part, and denying without prejudice to renew before Judge Arcara Defendant Fisher's and Pierce's requests for an audibility hearing.  The court DISMISSED Defendant Galarza's request for a Bill of Particulars as to paragraph 29a, b, and c of the Pynn Affirmation as MOOT, but otherwise reserved decision on her request for a Bill of Particulars.  Defendants' requests to join in motions made by co-Defendants was GRANTED.  To the extent that Defendants could not file additional motions in a timely fashion based on the advent of new information, the court GRANTED Defendants leave to file additional motions.  The court did not address at oral argument Defendant Pierce's and Fisher's requests for disclosure of informant identities.

Government.  (Doc. No. 68).  The court DISMISSED (1) all requests for information pursuant to Rule 16 as to Defendants Pierce and Galarza; (2) requests for a Bill of Particulars from Defendants Pierce, Fisher and Jones; and (3) Defendants' requests for *Brady* and *Giglio* material, as the Government represented it understood its obligations under *Brady* and stated it will offer *Giglio* material in a timely fashion.  *Id.*  The court GRANTED (1) Defendants' request for Fed.R.Evid. 404b ("Rule 404(b)") material, directing the Government to provide Rule 404(b) information to Defendants two weeks before trial unless otherwise directed by the District Judge; (2) Defendants' requests for testifying expert information pursuant to Fed.R.Evid. 702 ("Rule 702"), requiring the Government to provide a summary of testifying experts' reports and resumès to each Defendant not later than 30 days prior to trial; and (3) GRANTED the Government's motion for reciprocal discovery, requiring Defendants to provide such discovery to the Government **no later than May 4, 2006.** The court DENIED the request for ***Jencks Act*** material made by Defendants Fisher and Pierce, noting that it is customary that the pretrial order of the District Judge include the pretrial disclosure of witness statements pursuant to 18 U.S.C. § 3500 and stating the court has no authority to require such disclosure under *United States v. Ullah,* 2005 WL 629487, * 7 (W.D.N.Y. 2005) (citing *United States v. Scotti*, 47 F.3d 1237, 1249-50 (2d Cir. 1995) (denying pretrial production of ***Jencks Act*** material and citing *United States v. Sebastian*, 497 F.2d 1267, 1269-70 (2d Cir. 1974) (holding the court cannot compel pretrial production of ***Jencks Act*** material)).  Also, Defendants Fisher and Galarza withdrew their requests for severance without prejudice to renew at trial before the Hon. Richard J. Arcara.

**FACTS** [3]

The charges in the Indictment arise from an investigation conducted by the Drug

Enforcement Agency ("DEA") and local law enforcement, including the Buffalo Police

Department ("BPD") of an alleged cocaine possession and distribution conspiracy.

Defendants Martellus Jones, Maurice Fisher, Emilio Galarza, Irving Mitchell, Karen

Pierce, Shauncey Galarza, Daniele Liddle and Eugene Davis are alleged co-

conspirators in a drug trafficking conspiracy operating in and around Buffalo, New

York. [4]  According to the Government, Defendant Jones is the alleged leader of the

narcotics organization known as the "TALIBAN."  During the course of the investigation,

law enforcement officers learned Defendant Jones used telephones subscribed to his

wife, Shauncey Galarza at 26 Wick Street in Buffalo, (716) 888-0930, and a phone

subscribed to by his mother, Karen Burns at 593 Grant Street in Buffalo, (716) 228-

4556, to arrange for the sale of narcotics.

In September 2004, a confidential source ("CS-1") provided DEA Agents with

information regarding the drug distribution activities of the TALIBAN organization.  CS-1

informed agents that Martellus Jones sold large quantities of cocaine and crack cocaine

---

[3] Facts are taken from the allegations of the Indictment (Doc. No. 1), the pleadings and papers filed in connection with the instant action and the Affidavits of Agents Phillip Torre and Joseph Bongiovanni submitted in connection with 05-CR-174-A, charging Randall Parker and Michael Ray Jackson with criminal narcotics violations relative to the same narcotics organization, the "TALIBAN."

[4] In Agent Bongiovanni's Affidavit in Support of the Search Warrants in 05-CR-174-A, Shauncey Galarza is spelled "Chauncey Galarza."  Upon reviewing the papers submitted in connection with 05-CR-174-A, *United States v. Jackson, et al,* and 05-CR-173-A, *United States v. Jones, et al,* the instant case, the court finds Agent Bongiovanni's reference to "Chauncey Galarza" is to Defendant Shauncey Galarza.

in the Western New York area. [5]  Also, CS-1 admitted that he/she would contact Jones

via cellular telephone number (716) 228-4556 to purchase cocaine from Jones.  CS-1

and Jones would meet at various locations to effect narcotic transactions, including 358

Grant Street in Buffalo, the address of a private club operated by Michael Ray Jackson,

and 598 Grant Street in Buffalo, a residence Jones would frequent.  The CS could also

contact Michael Ray Jackson or Karen Pierce, Jones's mother, to purchase cocaine

and/or crack cocaine.  CS-1 stated that Jones would use 593 Grant Street and a

residence in Kenmore, an adjacent suburb, later determined by law enforcement to be

271 Kenmore Avenue in Tonawanda, New York, to further the drug distribution scheme.

CS-1 also correctly identified a blue Ford Expedition driven by Jones, New York State

license plate number DBX-6566, which is registered to Jones's wife, Shauncey.  The

CS's statement that Jones drove a burgundy four-door Cadillac has also been

confirmed by law enforcement.

A second confidential source ("CS-2") met with Drug Enforcement Agent Joseph

Bongiovanni ("Agent Bongiovanni") and Task Force Agents Michael Wright ("TFA

Wright") and Thomas Doctor ("TFA Doctor") in January 2005, stating he/she was an

associate of Defendant Jones who, for the past year, had distributed a substantial

amount of cocaine in Buffalo.  The CS provided agents with an accurate description of

Jones and the types of vehicles he drives.  Further, the CS stated he/she would meet

Jones at 593 Grant Street, the building wherein Jones's mother, Karen Pierce, lives, to

---

[5] Although not identified by Agent Torre as "CS-1" in his affidavit in support of the search warrant for (716) 888-0930 and (716) 885-4287 (Torre Affidavit II)  in 05-CR-174-A, *United States v. Jackson, et al;* a fair reading of Torre Affidavit II together with the Bongiovanni affidavit in support of the search warrant in 05-CR-174-A leads the court to conclude that the confidential source referred to generically by Agent Torre as "the CS" is the same person referred to by Agent Bongiovanni as "CS-1."

purchase cocaine.  According to the CS, the building was used by Jones as one of several "stash houses" throughout Buffalo for cocaine distribution.  Law enforcement has learned from CS-1 and CS-2 that Maurice Fisher will run the TALIBAN organization should Jones be incarcerated on a weapons possession charge.

A third confidential source ("CS-3") informed law enforcement agents involved in the investigation that Jones distributed cocaine and crack cocaine in Western New York, and identified Jones's associates as Maurice Fisher, Randall Parker, Michael Ray Jackson, Emilio Galarza, and Irving Mitchell.  CS-3 identified 204 Bird, 593 Grant Street, and 20 Baynes Avenue as residences Jones and his associates used for the distribution of cocaine.  CS-3 also stated to the agents that Jones drove a burgundy Cadillac and blue Expedition, and identified vehicles driven by Maurice Fisher and Emilio Galarza as a white Cadillac and silver Taurus, respectively.

Investigators supervised CS-1 and CS-3 in their attempts to arrange and execute controlled narcotics purchases from members of the TALIBAN organization, including Martellus Jones and Emilio Galarza, by cellular telephone number (716) 228-4456 and telephone number (716) 883-4299.  Based on the foregoing information, Buffalo Police Detective and DEA Agent Torre applied to Erie County Court Judge Michael L. D'Amico for eavesdropping warrants authorizing electronic interception over numbers that include (716) 888-0930, subscribed to by Shauncey Galarza and used by Jones, and (716) 228-4556, subscribed to by Karen Burns also used by Jones.  On June 10, 2005, Judge D'Amico issued trap and trace orders for numbers (716) 228-4556, and (716) 578-1158, as well as wiretap warrants for numbers (716) 228-4556 and (716) 578-1148.  On June 22, 2005, Judge D'Amico issued wiretap warrants for (716) 885-4287 and

(716) 888-0930.

As noted, Jones, Maurice Fisher, Emilio Galarza, Irving Mitchell , Karen Pierce, Shauncey Galarza, Daniele Liddle and Eugene Davis, were subsequently charged in a four count Indictment, filed on July 7, 2005.  Thereafter, on July 11, 2005, DEA Agent Joseph S. Bongiovanni applied to the undersigned for search warrants for approximately 19 residences and/or buildings.  In the instant action, Defendants challenge the search warrants issued for 271 Kenmore Avenue in Tonawanda [6] and 204 Bird Avenue in Buffalo.

## DISCUSSION

### I.   Request for Bill of Particulars

At oral argument on April 4, 2006, the court DISMISSED Defendant Pierce's, Fisher's and Jones's requests for a Bill of Particulars, as each Defendant admitted receiving the information they requested in the form of a Bill of Particulars from the Government through voluminous discovery provided to them.  The court also DISMISSED Defendant Galarza's request for the date which she allegedly joined the conspiracy, the identity of known, unnamed co-conspirators and the nature of the agreement between Galarza and her co-conspirators (Pynn Affirmation ¶ 29 (a),(b),(c), respectively), but reserved decision on Galarza's request that the Government

---

[6] In the heading of the section in Defendant Shauncey Galarza's motion papers challenging the search warrant for her residence on Kenmore Avenue, Galarza identifies the location as "272 Kenmore Avenue," however in the text that follows that heading, Galarza describes her residence as 271 Kenmore Avenue.  Also, in Exhibit A, Affidavit of Shauncey Galarza, the premises is identified as 271 Kenmore Avenue.  As such, the court considers Galarza's reference to 272 Kenmore Avenue to be a typographical error.

particularly describe acts she committed in furtherance of the conspiracy.  Specifically,

Galarza inquires whether the Government alleges she committed acts in furtherance of

the conspiracy apart from statements Galarza made to her husband over the telephone.

(Pynn Affirmation ¶ 29(d)).  Galarza bases her request on a fear of undue surprise at

trial that a witness may describe a drug transaction involving Galarza.  The Government

responds there is no evidence of Galarza conducting a hand-to-hand drug transaction,

but states it cannot further reveal the specific acts she allegedly committed in

furtherance of the conspiracy because it is part of the Government's trial evidence.

(Doc. No. 68).  Galarza argues this representation does not rule out the possibility that

the Government may attempt to prove Galarza was involved in a money transaction.

The test as to whether to order particularization is "whether the information

sought is necessary, not whether it is useful." *United States v. Matos-Peralata*, 691

F.Supp. 780, 791 (S.D.N.Y. 1988), *aff'd sub nom.*, *United States v. Benitez*, 920 F. 2d

1080 (2d Cir. 1990).  Courts will not order particularization where the government has

provided the information requested either "in the indictment or some acceptable

alternative form." *United States v. Bortnovsky*, 820 F. 2d 572, 574 (2d Cir. 1987);

*United States v. Feola*, 651 F.Supp. 1068, 1133 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857

(2d Cir. 1989), *cert. denied*, 493 U.S. 834 (1989).  A Bill of Particulars should only be

required "where the charges in the indictment are so general that they do not advise the

defendant of the specific acts of which he is accused." *Feola, supra*, at 1132.  Further,

"[a]cquisition of evidentiary detail is not the function of the bill of particulars." *United*

*States v. Torres*, 901 F.2d 205, 234 (2d Cir.), *cert. denied*, 498 U.S. 906 (1990)

(denying request for bill of particulars identifying unindicted alleged co-conspirators

referred to in indictment as 'known and unknown' on the basis that such information was unnecessary to advise defendants of the specific acts of which they were accused).

A defendant does not "need" detailed evidence about a charged conspiracy in order to prepare for trial properly. *Feola, supra*, at 1132. Additionally, as the government can prove the existence of a conspiracy through circumstantial evidence, a bill of particulars comprised of very specific details is not appropriate. *United States v. Taylor*, 707 F.Supp. 696, 699 (S.D.N.Y. 1989).

The court finds it is unnecessary for the Government to state who may have transacted drugs with Galarza. However, to the extent that the Government intends to establish Galarza's status as a co-conspirator by her engaging in narcotics trafficking or monetary transactions, the court directs the Government to particularize each date and approximate time that Galarza conducted a drug transaction or engaged in a monetary transaction in furtherance or aid of the conspiracy so as to avoid undue surprise at trial.

## II.   Disclosure of Informant Identities

Defendants Fisher and Pierce have requested the Government to provide the names of informants or cooperating sources who provided information to investigators in this case concerning the pending charges. Pieri Affirmation ¶¶ 30-31; Eoannou Affirmation ¶¶ 21-22. Specifically, Defendants assert disclosure is required to enable Defendants to challenge the informants' credibility based on factors that include Government promises of leniency in exchange for informant cooperation. The Government argues disclosure of informant identities is not required because "[D]efendants have been provided with the substance of the informants' testimony" through disclosure of the Title III applications in this case. Government Response at

29-30.  As such, the Government contends that any further disclosure pertaining to

informant identity and impeachment constitutes *Brady* and *Jencks Act* material.[7]  *Id.*

Substantial policy considerations override the need for full disclosure of

informants' identities.  *Roviaro v. United States*, 353 U.S. 53, 61 (1957) (holding that

informer's privilege must yield to disclosure at trial if necessary to a "fair determination").

Disclosure of the identity of confidential informants may be withheld to protect the

anonymity of informants and to secure the informants' continued cooperation in

furnishing information regarding violations of law.   *Roviaro,* 153 U.S. at 59; *United*

*States v. Fields*, 113 F.3d 313, 324 (2d Cir.), *cert. denied*, 522 U.S. 976 (1997).  It is

equally permissible to withhold information from which such identity may be inferred and

thus revealed.  *See Roviaro, supra*, at 60.  It is well settled that "an informant's identity

need not be disclosed unless 'essential to the defense.'" *United States v. Morales*, 280

F.Supp.2d 262, 271 (S.D.N.Y. 2003) (quoting *United States v. Russotti*, 746 F.2d 945,

949 (1984) (quoting *Scher v. United States*, 305 U.S. 251, 254 (1938)).

In determining whether such disclosure is essential, courts are required to

balance the public's interest in obtaining information to assist law enforcement against

the defendant's right to prepare a defense.  *Roviaro, supra*, at 62; *United States v.*

*Jackson*, 345 F.3d 59, 70 (2d Cir. 2003), *cert. denied,* 541 U.S. 956 (2004).  A

confidential informant's identity or the contents of an informant's communication must

therefore be disclosed if such information is "relevant or helpful" to an accused's

---

[7] The Government represents it understands its obligations under *Brady*, but states it does not presently possess any such material.  The Government further represents it will provide *Jencks* material to Defendants prior to trial.  As the court noted at oral argument, *Jencks* material is typically provided to Defendants two weeks prior to trial or at the direction of the District Judge.

defense at trial, particularly in relation to a potential entrapment defense or a defendant's knowledge of the character of the contraband. *Roviaro, supra,* at 60-61, 64; *DiBlasio v. Keane*, 932 F.2d 1038, 1042 (2d Cir. 1991); *see also United States v. Jackson*, *supra*, at 69-70 (approving informant identity disclosure to facilitate entrapment defense to drug sale charge).

Defendants bear the burden of establishing the need for such disclosure and such need will be found only upon a demonstration that the absence of such disclosure will deprive the defendant of a fair trial. *Fields,* supra, at 324; *United States v. Lilla*, 699 F.2d 99, 105 (2d Cir. 1983). Nevertheless, the prosecution is not required to disclose the identity of a confidential informant to assist a defendant in attacking, at pretrial suppression hearings, probable cause for a warrantless arrest and search. *McCray v. Illinois*, 386 U.S. 300, 305 (1967) (no disclosure required, based on evidence, where presiding judge satisfied that the informant relied upon by arresting officer existed and was reliable); *Roviaro, supra*, at 61 (noting cases requiring disclosure where warrantless searches based on anonymous informants' information were at issue); *Fields, supra,* at 324 (*in camera* appraisal by trial court of informant's accuracy to establish probable cause for warrantless search obviates any need for disclosure of informant's identity).

Disclosure is also warranted where the informant's testimony is "material to the defense". *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988), *cert. denied,* 489 U.S. 1089 (1989). "Unless the informer's testimony would be relevant and helpful to the defense, or essential for a fair trial, the defense motion for the identification of the whereabouts or production of the informer can be summarily denied." *United States v.*

*Turbide*, 558 F.2d 1053, 1060 (2d Cir.), *cert. denied sub nom., Perez v. United States,* 434 U.S. 934 (1977); *see also, Roviaro, supra*, at 60-61.

Here, the court finds Defendants have failed to meet their burden establishing the need for the requested disclosure.  Specifically, Defendants have not established that, absent such disclosure, Defendants will be deprived of a fair trial.  Further, other than Defendants' contentions that disclosure of informant identities is necessary to "investigate their allegations, biases, and benefits derived from cooperating with the government," Defendants have not shown the informant's testimony will be a significant factor in determining the respective Defendant's guilt or innocence.  As such, Defendants' requests for disclosure of informant identities are DENIED.

## III.   Severance

Defendants Fisher, Pierce and Shauncey Galarza request separate trials, pursuant to Fed.R.Crim.P. 14.  Eoannou Affirmation ¶¶ 21-22; Pieri Affirmation ¶¶ 32-33; Pynn Affirmation ¶¶ 22-25.  At oral argument, Defendants Fisher and Galarza withdrew their motions to sever without prejudice to renewal before the District Court Judge.  Doc. No. 68.  The court reserved decision on Defendant Pierce's request for a severance.

Counsel for Defendant Pierce contends the evidence connecting Pierce to the conspiracy is insubstantial and prejudicial to her.  Doc. No. 68.  Further, Pierce's counsel asserts that Defendant Fisher may testify on Pierce's behalf at a severed trial, but has presented no affidavit by Fisher so stating.  Additionally, counsel for Pierce could not confirm that Fisher would be willing to testify at a severed trial, acknowledging only that discussions to this purpose with Fisher's attorney were currently underway.

The Government responds generally that Defendants Fisher, Pierce and Galarza have not shown the requisite prejudice to warrant severed trials.  Government Response at 31.  Further, the Governments asserts that some prejudice to co-Defendants is inevitable and permissible, given the judicial economy that results from joint trials. *United States v. Cardascia,* 951 F.2d 474, 482-83 (2d Cir. 1991).  Finally, the Government contends Defendants have not shown any co-Defendants are willing to testify at a severed trial or waive their Fifth Amendment privilege or not testify at a joint trial.  Government Response at 34 (citing *United States v. Sliker*, 751 F.2d 477, 496 (2d Cir.), *cert. denied sub nom., Buchwald v. United States,* 470 U.S. 1058 (1985).  Absent such showing, the Government argues, a separate trial is not warranted.

A court considering a motion for severance under Fed.R.Crim.P. 14 should make a two-step inquiry, *i.e.,* "whether joinder of the counts was proper, and if not, whether misjoinder was prejudicial to the defendant." *United States v. Ruiz*, 894 F.2d 501, 505 (2d Cir. 1990).  If the joinder was proper, the court shall then decide whether the joinder was prejudicial to the defendant pursuant to Fed.R.Crim.P. 14. *Ruiz, supra,* at 505.  The decision whether to grant severance is "committed to the sound discretion of the trial judge." *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989), *cert. denied,* 493 U.S. 1081 (1990).  "There is a preference in the federal system for joint trials of defendants who are indicted together."  *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (narcotics conspiracy case).  Joinder of counts in an indictment is proper, pursuant to Fed.R.Crim.P. 8(a), where two or more persons' criminal acts are "unified by some substantial identity of facts or participants" or "arise out of a common plan or scheme" as in a conspiracy case.  *United States v. Attanasio*, 870 F.2d 809, 815 (2d

Cir. 1989).

Here, the CCE and Conspiracy Counts are plainly connected as the CCE count alleges Jones engaged in the criminal enterprise as more fully alleged in the Conspiracy Count, thereby demonstrating the requisite identity of facts and participants.  As such, the requirement for joinder of counts under Rule 8(a) permitting joinder of counts that "are of the same or similar character, or are based on the same act or transaction or are connected with or constitute parts of the same scheme or plan" has been satisfied. Therefore, as Jones, Fisher, Emilio Galarza, Mitchell, Pierce, Shauncey Galarza, Liddle and Davis are charged in Counts 1 and 2, neither count, as joined in the Indictment, violates Rule 8(a) as to these Defendants.  Similarly, the substantive 21 U.S.C. § 841 counts, Counts 3 and 4, against Jones and Emilio Galarza, respectively,  are also properly joined as a plain reading of the Indictment demonstrates the violations occurred during the period the charged conspiracy involving Jones and all other Defendants and the CCE charge against Jones, alleged in Counts 1 and 2, were operative.  Because the substantive § 841 counts are alleged to have occurred within the period of the Conspiracy Count and the CCE Count they are also plainly "connected . . . with the same scheme or plan," *i.e.*, the CCE and Conspiracy Counts. Fed.R.Crim.P. 8(a).  As such, they are properly joined in the Indictment as authorized by Rule 8(a).  Accordingly, all counts as to Fisher, Pierce and Shauncey Galarza were properly joined in the Indictment in compliance with Rule 8(a).

Nevertheless, a court is authorized to sever counts or defendants, pursuant to Fed.R.Crim.P. 14(a), "[i]f it appears that a defendant . . . is prejudiced by a joinder," despite an indictment's facial compliance with Fed.R.Crim.P. 8(a).  *United States v.*

*Feyrer,* 333 F.3d 110, 114 (2d Cir. 2003); *United States v. Nguyen*, 793 F.Supp. 497,

503 (D.N.J. 1992).  However, a defendant has a "heavy burden" to show facts

demonstrating that the defendant would be so prejudiced by a joint trial, that the joint

trial would, in effect, deny him or her a fair trial.  *United States v. Piervinanzi*, 1990 WL

139021 * 2 (S.D.N.Y. 1990).  Specifically, a defendant requesting severance under

Fed.R.Crim.P. 14 must show substantial prejudice resulting from joinder, not just that he

would have a better chance for acquittal at a separate trial. *United States v. Torres*, 901

F.2d 205, 230 (2d Cir.), *cert. denied sub nom. Cruz v. United States,* 498 U.S. 906

(1990); *United States v. Villegas*, 899 F.2d 1324, 1347 (2d Cir.), *cert. denied,* 498 U.S.

991 (1990).

As a ground for severance, Defendant Pierce contends that many co-Defendants

in this case have defense theories that directly conflict with hers.  Pieri Affirmation ¶ 35.

However, "the mere fact that codefendants seek to place blame on each other is not the

sort of antagonism that requires a severance."  Further,

> When the challenge to the denial of severance is premised
> on a claim that two defenses were antagonistic, a defendant
> satisfies his burden of showing substantial prejudice only if it
> can be said that "'the jury, in order to believe the core of
> testimony offered on behalf of [one] defendant, must
> necessarily disbelieve the testimony offered on behalf of his
> co-defendant.'"

*United States v. Villegas,* 899 F.2d at 1346 (citing *United States v. Potamitis,* 739 F.2d

784, 790 (2d Cir. 1984) (quoting *United States v. Carpentier,* 689 F.2d 21, 27-28 (2d

Cir. 1982), *cert. denied,* 459 U.S. 1108 (1983)).  Defendant Pierce fails to explain why

the jury must disbelieve testimony one co-Defendant offers to accept the testimony

proffered by another in support of her defense, nor has Pierce provided any other

examples to support her request.  *See Zafiro, supra.*

The Second Circuit has stated that "proof that a co-defendant would waive his Fifth Amendment privilege and testify at a severed trial" is a factor to consider in determining whether to grant Defendant's motion for severance on the ground that a co-defendant would offer "exculpatory testimony at a separate trial."  *United States v. Cardascia,* 951 F.2d 474, 485 (2d Cir. 1991).  However, Defendant Pierce does not state that a joint trial will prevent a co-defendant from providing testimony favorable to her or that any co-Defendant has agreed to waive their Fifth Amendment privilege and provide testimony at a separate trial to exculpate Pierce on the charges against her. Although counsel for Pierce represented at oral argument that he was discussing with Fisher's counsel the possibility that Defendant Fisher would testify at a severed trial for Pierce, counsel admitted there was no agreement to that effect at that time.  Upon reviewing the trial court's denial of severance motions in *United States v. Finkelstein*, 526 F.2d 517, 523-24 (2d Cir. 1975), *cert. denied sub nom., Scardino v. United States*, 425 U.S. 960 (1976), the Second Circuit listed four factors a trial court may consider in making its determination on a request for separate trials.  These include

> (1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege . . .  (2) the degree to which the exculpatory testimony would be cumulative . . . (3) the counter arguments of judicial economy . . . and (4) the likelihood that the testimony would be subject to substantial, damaging impeachment . . .

*United States v. Finkelstein,* 526 F.2d at 523-24.  (Internal citations omitted).

Here, Defendant Pierce failed to make a sufficient showing that any of her co-Defendants, including Fisher, would provide exculpatory testimony on Pierce's behalf

and waive their Fifth Amendment privilege at a severed trial.  The fact that counsel were merely discussing the possibility of such agreement in the future does not constitute the requisite agreement at present.  Thus, the basis for Pierce's motion for severance is, at present, speculative.  *See Cardascia, supra.*  Accordingly, Pierce's motion to sever is DENIED without prejudice to renewal before the District Judge.

## IV.    Suppression of Intercepted Electronic Communications

Defendants Pierce, Fisher, Jones and Galarza move to suppress any evidence derived from electronic eavesdropping in this case, arguing that the Intercept Orders issued by Judge D'Amico authorizing the eavesdropping activity were not supported by probable cause or necessity in violation of 18 U.S.C. § 2518, and that the interceptions were not properly minimized in violation of 18 U.S.C. § 2518(5) and New York Criminal Procedure Law § 700.30(7).  Pieri Affirmation ¶¶ 41-49; Eoannou Affirmation ¶¶ 32-40; Molloy Affirmation ¶¶ 9-18; Pynn Affirmation ¶¶ 5-10.  Defendants contend the affidavits of Agent Torre (1) fail to establish the confidential sources' reliability (Eoannou Affirmation ¶¶ 45-46; Molloy Affirmation ¶¶ 13, 15-16); (2) do not demonstrate that Jones, Galarza or any individual utilized the target telephones for illegal purposes (Eoannou Affirmation ¶ 47; Pynn Affirmation ¶ 7); (3) the information contained in the first supporting affidavit may have been stale (Eoannou Affirmation ¶ 45); and (4) "[i]nsofar as the second [Torre] affidavit relies upon intercepted conversations from the first [Torre] affidavit, it should also fail," (Eoannou Affirmation ¶ 48; *see also* Government Response at 16).

The Government disputes these assertions, arguing that (1) the confidential sources cited in the affidavits underlying the eavesdropping orders are reliable; (2) the

information contained in the affidavits is not stale; and (3) assuming *arguendo* that one or both of the supporting affidavits were not supported by probable cause, Defendants have not shown that the "good faith" exception to the Exclusionary Rule is inapplicable to the wiretap order.  Government Response at 19-21.  The court considers each of Defendants' contentions the following order:

## A.    Probable Cause

### 1.    Reliability of Confidential Informants

Defendants Fisher and Jones argue that the reliability of the confidential informants relied upon in the Torre Affidavits was never established, resulting in the absence of probable cause.  Particularly, Fisher states that the June 9, 2005 Torre Affidavit does not contain information establishing the reliability of the first CS, who asserted that he/she had contacted Jones on one telephone number, identified in the requested eavesdropping order, to engage in monthly cocaine purchases.  Eoannou Affirmation ¶ 45.  Fisher also challenges the reliability of the second CS in the first affidavit, alleging there is insufficient information to establish the second CS's reliability or source of belief. [8]  *Id.* ¶ 46.  According to Fisher, the affidavit does not establish that other individuals used the target telephones "to engage in illegal activities."  *Id.* ¶ 47.

---

[8] Fisher alleges that the second CS in the initial supporting affidavit informed Agent Torre that Fisher operates a club on Grant Street, however, according to Fisher, there is no information in the affidavit which establishes the second CS's reliability or the source of the CS's belief.  The court has reviewed Torre Affidavit I and finds the second CS made no such statement.  Rather, the second CS alleges that Michael Ray Jackson, charged with narcotics violations under 05-CR-174-A, operates a club on Grant Street.  Because counsel for Defendant Fisher also represents Michael Ray Jackson in 05-CR-174-A, a related matter involving the same investigation, and stated in that case that the second CS alleged that Jackson operated a social club on Grant Street, the court understands Fisher's counsel's representation that the second CS alleged Fisher operated a club on Grant Street to be an inadvertent error.

Defendant Jones argues it is impossible to establish the reliability of the confidential informants referred to in the supporting affidavits without knowing their names and/or identities.  Molloy Affirmation ¶ 12.  The Government opposes these contentions, arguing the reliability of the confidential informants is sufficiently established through a series of controlled narcotics purchases by the CS described in the affidavits, the background provided on the CS in the affidavits, and the volume of telephone calls over telephone lines utilized by Jones "which reveal Jones utilizing phones to communicate with others in order to distribute drugs".  Government Response at 19, citing Torre Affidavit I pp. 13-15 and Torre Affidavit II pp. 17-21.

The court finds the reliability of the confidential sources in the first Torre Affidavit was sufficiently established to support a finding of probable cause for a wiretap authorizing order.  For purposes of establishing probable cause, the Second Circuit considers an informant to be reliable if such information "is based on reliable means, such as first-hand observations or second-hand information from reliable sources, rather than unreliable means such as rumor or innuendo," and such confidential source information will be found to be "sufficiently reliable" where it has been "corroborated in material respects by independent evidence."  *United States v. Wagner,* 989 F.2d 69, 72-73 (2d Cir. 1993).  Also, statements made by confidential informants which qualify as admissions against penal interest, including admitting to personal involvement in the alleged criminal activity or to witnessing criminal activity, is a factor to consider in establishing informant reliability.  *United States v. Rowell,* 903 F.2d 899, 903 (2d Cir. 1990).  The reliability of the confidential informants as to each of the intercept orders challenged on this basis can be established under one or more of these factors.

Here, the information contained in the initial affidavit ("Torre Affidavit I") as supplied by the confidential informants was personally obtained by them when the informants contacted Randall Parker and Defendant Jones over the target telephone lines to set up and execute controlled drug transactions.  Torre Affidavit I ¶¶ 30-48.  In accordance with such phone calls, drug purchases occurred between the CS and Parker on February 8, 2005 and June 3, 2005, and between the CS and Jones on May 11, 2005.  Torre Affidavit I ¶¶ 25 -36, 45-48.  The CS attempted to execute a second controlled drug purchase from Martellus Jones on June 2, 2005 by calling Jones on number (716) 228-4556.  *Id.* ¶ 44.  Jones stated his situation was "slow motion," which the CS explained "meant that Jones was out of cocaine."  *Id.*

In addition to these controlled buys and attempted purchases, which were observed by the CS and investigators, the evidence provided by the confidential sources was "corroborated in material respects by independent evidence." *United States v. Wagner*, 989 F.2d at 72-73.  For example, the CS informed Agent Kasprzyk that Parker is a bartender at Jackson's Grant Street club, that Parker sold cocaine to customers there, and that the CS could enter the club and purchase cocaine from Parker.  Torre Affidavit I ¶ 21.  On January 28, 2005, the CS executed a controlled, *i.e.*, monitored by investigators, buy of cocaine from Parker at Jackson's club, demonstrating that these transactions did occur there, and that the CS could make the purchase.  *Id.* ¶¶ 25-29.  While in route to make this controlled purchase, the CS conversed with the driver of the vehicle identified as Martellus Jones.  *Id.* ¶ 27.  Although the vehicle was then registered to Shauncey Galarza, "court sources" confirmed Jones and Galarza are married.  This information corroborated the CS's averment that CS personally knows

22

Jones. *Id.* ¶ 10.  Further, the CS's initial description of Jones matched the description contained in Buffalo Police Department Records. *Id.* ¶¶ 10-11.  The CS also accurately described a vehicle Jones drives as "a burgundy 2000 Cadillac, NY Reg. CWB-8298." Id. ¶ 10.  A 911 tape regarding a July 17, 2004 criminal incident describes "a maroon four-door Cadillac, NY Reg. CWB8298, in the driveway of Jones's residence at the time (the site of the seizure), 26 Wick Street, Buffalo." *Id.* ¶ 12.  Records from the state Department of Motor Vehicles showed the vehicle is registered to Karen Y. Burns, a/k/a Karen Pierce, "believed to be Jones'[s] mother." *Id.* ¶ 13.  Thus, it was reasonable to believe that Pierce, as Jones's mother, would have given her permission to Jones to drive the Cadillac.

In this investigation, confidential sources provided investigators with information regarding Defendants and others which implicated themselves, as well as Defendants in drug related offenses.  For example, in the Torre Affidavit I, a confidential source told law enforcement "he/she has been an associate of one MARTELLUS JONES (a/k/a Marty Jones) in the distribution of significant amounts of cocaine in the Buffalo area," Torre Affidavit I ¶ 9, and that CS "purchased cocaine from JONES at 593 Grant Street." *Id.* ¶ 16.  In making these statements, the confidential source made admissions against his/her own penal interest, a factor courts have considered to establish the reliability of confidential informants. *Rowell,* 903 F.2d at 903.

Based on the facts set forth in the Torre Affidavit I, the court finds Detective Torre supplied County Court Judge D'Amico with facts sufficient to establish the confidential sources's reliability.

## 2.   **Probable Cause as to Defendants Jones and Shauncey Galarza**

Defendant Jones asserts that Detective Torre's description in the affidavit supporting the first eavesdropping order of the drug transaction which occurred between a confidential informant and Randall Parker in January, 2005 does not establish probable cause as to Defendant Jones because Jones is not a party "nor a participant in any drug transaction in January with this informant."  Molloy Affirmation ¶ 14.  Similarly, Shauncey Galarza asserts that, as many of her intercepted phone calls concerned personal matters such as "going to Wal-Mart to purchase a VCR tape" or "the birth of their child" (referring to Martellus Jones and herself), the eavesdropping orders were issued without probable cause as to her.  Pynn Affirmation ¶ 7.  The Government argues that the affidavits, taken as a whole, "amply support a showing of probable cause for the interceptions," and therefore Defendants' contentions are meritless. Government Response at 21.

The court has reviewed the affidavit describing the January, 2005 drug transaction in its entirety and finds that, taken as a whole, the affidavit provides ample probable cause that cellular telephone number (716) 228-4556 is used by Jones and others to further illegal activity.  Significantly, the court notes it was only necessary that probable cause be established by the application with respect to the target phones, not necessarily each person to whom the phones were listed or, as Defendants contend, specific users of the phones.  *See United States v. Ambrosio,* 898 F.Supp. 177, 184-85 (S.D.N.Y. 1995) (citing *United States v. Donovan*, 429 U.S. 413, 427 n. 15 (1976)). Contrary to Defendants' assertions, in seeking electronic eavesdropping orders, the government is not required to show probable cause with respect to each interceptee.

24

*Ambrosio, supra,* at 183. "The Constitution only requires that the application identify the telephone line to be tapped and the particular conversations to be seized." *Ambrosio, supra,* at 184.

> Title III requires that a surveillance application include the identity of the person, if known, committing the offense and whose communications are to be intercepted.  18 U.S.C. § 2518(1)(b)(iv).  The wiretap statute does not require that every person whose conversations are intercepted must be named in the application nor does it expressly prohibit the investigative agency from naming other individuals in the application . . ..  Rather, the statute's conditions are satisfied as long as the affidavit names an individual for whom there is probable cause to suspect criminal activity.

*United States v. Trippe,* 171 F.Supp.2d 230 (S.D.N.Y. 2001) (underlining added).

Here, there is substantial evidence contained within the Torre Affidavit I to support a finding of probable cause that criminal activity will be uncovered by interception orders for the telephone numbers identified as target numbers in the Torre Affidavit I, and that criminal activity will be uncovered by intercepting communications of Defendants over the target phones.  All of the controlled drug buys described in the Torre Affidavit I were initiated through contacting Defendant Jones and Randall Parker, a TALIBAN associate who is charged with narcotics violations under a related Indictment, 05-CR-174-A, using the target telephone numbers identified by Agent Torre. Specifically, the affidavit references a controlled narcotics purchase on May 11, 2005 which required the confidential source ("the CS") to contact Jones using 228-4556 to execute the transaction.  Torre Affidavit I ¶¶ 38, 41.  The CS attempted to arrange another controlled cocaine purchase on June 2, 2005 by calling Jones on 228-4556, however Jones indicated he was in "slow motion," which, the CS informed investigators,

meant "Jones was out of cocaine." *Id.* ¶ 44.  Randall Parker was contacted by the CS on June 3, 2005 over target telephone number (716) 578-1148, pursuant to which a controlled narcotics purchase was arranged and executed.  In addition to the described controlled purchases, the CS stated he/she contacted Jones "approximately once a month" using target cellular number (716) 228-4556 to purchase cocaine,  Torre Affidavit I ¶ 14, reflecting the likelihood that criminal activity occurs over these phone lines.

In his affidavit, Agent Torre also describes records which were subpoenaed for (716) 578-1148, one of two target telephone numbers identified in the first supporting affidavit, which "show more than 2500 calls during the 31 day period, or more than 80 calls average per day," several of which have been identified as "subscribed to or used by known drug traffickers."  Torre Affidavit I ¶ 57.  Subpoenaed records for (716) 228-4556, the second target telephone number in the first supporting affidavit, which was used by Martellus Jones "for the period May 1, 2005 - June 3, 2005" also showed, according to Torre, that Jones received more than 150 calls per day, on average.  *Id.* ¶ 59.  Additionally, these records confirmed conversations occurred between Parker's cell phone number, (716) 578-1148, a target telephone number, and the telephone number used by Jones, (716) 228-4556.  *Id.* ¶ 60.  Based on the unusually large number of calls which occurred over the target phone lines and the fact that a reliable confidential source had contacted Parker and Jones using these same numbers to arrange and execute drug transactions, Agent Torre concluded that individuals other than Defendants and the confidential sources had used the target telephone lines to participate in illegal drug transactions.  Torre Affidavit I ¶¶ 62-68.

To establish probable cause for the challenged wiretaps, it is necessary that under the "totality of the circumstances" set forth in the supporting affidavit, there exists "a fair probability that evidence of a crime will be obtained through the use of electronic surveillance." *Illinois v. Gates,* 462 U.S. at 238-39.  Taken as a whole, the information set forth in the Torre Affidavit I provided ample evidence for Judge D'Amico to believe that electronic surveillance of the identified telephone numbers would result in the discovery of criminal activity relating to narcotics sales over the target phones.

### 3.    Staleness

Defendant Fisher asserts the CS's representation that the CS made monthly purchases of cocaine from Defendant Jones "in the past" fails to specify when these purchases occurred.  Eoannou Affirmation ¶ 45.  Although Fisher does not specifically allege the information regarding monthly drug purchases from Jones by the CS is or could be "stale," the Government construes Fisher's statement to be a staleness attack on the initial affidavit.  Government Response at 20.  Dismissing Fisher's contention, the Government responds generally that courts apply more flexible requirements of to resolve staleness issues raised in narcotics conspiracy cases, *id.,* citing *Feola, supra,* at 1090-91.

"'[T]he principal factors in assessing whether or not the supporting facts have become stale are the age of those facts and the nature of the conduct alleged to have violated the law.'"  *United States v. Rowell,* 903 F.2d 899, 903 (2d Cir. 1990) (quoting *United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981), *cert. denied,* 458 U.S. 1110 (1982)).  "Moreover, '[n]arcotics conspiracies are the very paradigm of the continuing enterprises for which courts have relaxed the temporal requirements of non-staleness.'"

*Rowell, supra* (citing *Feola, supra,* at 1090).  In *Rowell, supra*, the court held that information as old as 18 months need not be suppressed on the basis of staleness, particularly with regard to the investigation of a narcotics conspiracy.  *Rowell, supra*, at 903.

In the instant case, the court finds that although requirements of non-staleness are generally relaxed in narcotics conspiracy cases, there is no indication in the June 9, 2005 affidavit as to exactly when the CS made monthly purchases from Defendant Jones.  Torre Affidavit I ¶ 14.  As such, these reported monthly purchases may or may not be stale.  However, probable cause that criminal activity will be intercepted over the target telephone lines at issue, (716) 228-4556 and (716) 578-1148, is not based solely on the CS's reports of monthly purchases from Defendant Jones which occurred sometime in the past.  Instead, probable cause is established by factors which include (1) controlled purchases of narcotics arranged by the CS over the  target telephone numbers, including the number the CS allegedly used to contact Jones for monthly cocaine purchases; (2) telephone records which establish, based on the volume of calls received on the target telephone numbers, the likelihood that these phone lines are utilized in furtherance of criminal narcotics activity; and (3) law enforcement's ability to corroborate the CS's allegations through use of other independent investigative techniques.  As such, the specific date which the CS made monthly narcotics purchases from Defendant Jones using target telephone number (716) 228-4556 is not crucial to the probable cause underlying the June 9, 2005 affidavit, and Defendant's assertion that these purchases may be stale is thus without merit.

4.      **The Second Torre Affidavit**

As stated, *supra,* at 20, Defendant Fisher contends that Torre Affidavit II fails to

establish probable cause that criminal activity will be intercepted over the target

telephone numbers insofar as it relies on intercepted conversations from Torre Affidavit

I.  Eoannou Affirmation ¶ 48.  However, the court has determined, *Discussion, supra,* at

21-28, that the first Torre Affidavit is amply supported by probable cause.  As such,

Defendant's basis for arguing insufficient probable cause as to the second affidavit is

also meritless.

5.      **Motion for a *Franks* Hearing**

Defendant Jones moves, in the alternative, for a hearing pursuant to *Franks v.*

*Delaware*, 438 U.S. 154 (1978), "to determine the reliability of the information contained

in [Detective Torre's] supporting affidavits."  Molloy Affirmation ¶ 18.  The Government

did not specifically respond to this issue.

Under *Franks*, evidence obtained pursuant to a warrant based on materially false

and misleading information is not admissible absent a hearing at which it is determined

whether, setting aside the false statements, sufficient independent evidence was

presented to the judicial officer such that the warrant was, notwithstanding the tainted

information, issued on probable cause.  *Franks, supra,* at 155-56.  Moreover, before a

defendant is entitled to a hearing to test the truthfulness of a warrant's underlying

affidavits, the "defendant must make a 'substantial preliminary showing' that: (1) the

claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or

reckless disregard for the truth; and (2) the alleged falsehoods or omissions were

necessary to the judge's probable cause finding."  *United States v. Salameh*, 152 F.3d

88, 113 (2d Cir. 1998) (citing *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987)), *cert. denied sub nom., Abouhalima v. United States,* 525 U.S. 1112 (1999). Additionally, a hearing is not required where an affidavit in support of a search warrant application contains material allegedly presented with "deliberate falsity or reckless disregard" for the truth if "when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause." *Franks, supra*, at 171-72; *United States v. Ferguson*, 758 F.2d 843, 849 (2d Cir.), *cert. denied*, 474 U.S. 841 (1985). As relevant here, *Franks* has been limited to the statements contained in the affidavit based on the investigator's personal knowledge and does not extend to the information an informant may have provided to the applicant. *United States v. Wapnick*, 60 F.3d 948, 956 (2d Cir. 1995), *cert. denied*, 517 U.S. 1187 (1996).

In this case, Defendant Jones does not allege there were any inaccuracies or omissions contained in the affidavits supporting the wiretaps, nor does Jones contend the affiant presented statements in the supporting affidavits with "deliberate falsity or reckless disregard" for the truth that the issuing judicial officer relied upon in authorizing the wiretaps. Jones merely questions the necessity for the eavesdropping orders and the reliability of confidential informants in this case. Molloy Affirmation ¶¶ 13-18. As such, Jones failed to make a "substantial preliminary showing" that Detective Torre knowingly and recklessly made false statements in his applications for the eavesdropping warrants such that there could be no reasonable belief that the warrants were issued with probable cause. Accordingly, Jones failed to satisfy the requirements for a *Franks* hearing and Jones's request is therefore DENIED.

**B.     Necessity**

Defendants Jones and Fisher challenge the necessity of the two eavesdrop applications.  While Defendant Pierce states that necessity of a wiretap must be established before its issuance, Pierce does not claim that the wiretap warrants were issued without a proper showing of necessity.  Pieri Affirmation ¶¶ 47-49.

Defendants Jones and Fisher contend the normal investigative techniques employed by investigators prior to submitting applications for wiretap orders were succeeding.  Eoannou Affirmation ¶ 50; Molloy Affirmation ¶ 17.  Specifically, Defendant Fisher asserts that law enforcement agents were able to identify the source of supply and means of distribution in Western New York using ordinary law enforcement techniques.  Eoannou Affirmation ¶ 50.  Additionally, Fisher contends the purpose of the wiretaps were to "provide the identity of persons, presently unknown, who are involved with Martellus Jones and Randall Parker in the criminal enterprise," however "the affidavit provides no probable cause to believe that there were people involved other than those already listed in the affidavit."  *Id.* ¶ 54.  Further, "the affidavit provides no probable cause to believe that defendant Fisher used the foregoing telephones to conduct illegal business or that he was even involved in the alleged drug trafficking conspiracy."  *Id.*

Defendant Jones contends that the significant surveillance of co-conspirators and their vehicles underway when the eavesdropping orders were applied for may have realized the goals of the investigation.  Molloy Affirmation ¶ 17.  Similarly, Jones argues that the electronic surveillance devices worn by confidential informants may have recorded the information investigators needed, thereby negating the necessity for the

wiretap.  *Id.*

The Government responds that both affidavits describe investigative techniques which were used or attempted, and the reasons why other techniques were not utilized. Government Response at 24, citing Torre Affidavit I ¶¶ 62-81 and Torre Affidavit II ¶¶ 92-141. [9]  Additionally, the Government contends the affidavits in this case, in compliance with 18 U.S.C. § 2518(1)(c) ("§ 2518(1)(c)), list techniques which had "been tried and failed, or why they reasonably appear[ed] to be unlikely to succeed, or [determined] to be too dangerous."  Government Response at 24.  Such investigative techniques include the use of search warrants, pen register information, undercover agents, grand jury subpoenas, informants, physical surveillance and target interviews. *Id.* at 25.  The Government therefore maintains that this information, as provided to Judge D'Amico, provided facts which "were more than minimally adequate" to determine the necessity of the requested electronic surveillance.  *Id.*at 25-26.  The Government further contends that electronic surveillance was necessary to obtain a conviction of the members of the TALIBAN narcotics conspiracy.  *Id.* at 25.  Similar affidavits, stating that despite use of visual surveillance and pen registers employed against suspected members of the conspiracy for several months during the interceptions and the receipt of informant information, agents were unable to determine the extent of a drug trafficking conspiracy, have been held sufficient to establish the need for an intercept order.  *See United States v. Torres,* 901 F.2d at  231-32; *United States v. Young*, 822

---

[9] The Government identifies these portions of the affidavits as pages  62-81 and pages  92-141, however the court has reviewed the affidavits and understands the Government to refer to ¶¶ 62-81 of Torre Affidavit I and ¶¶ 92-141 of Torre Affidavit II.

F.2d 1234, 1237 (2d Cir. 1987); *United States v. Puglisi*, 790 F.2d 240, 241-42 (2d Cir.), *cert. denied,* 479 U.S. 827 (1986).

As required by §2518(1)(c), an application for an electronic intercept order must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear unlikely to succeed if tried or to be too dangerous."  The purpose of this requirement is not to render electronic surveillance an investigative tool of last resort, but to apprise the judicial officer of the progress of the investigation and the difficulties inherent in the use of normal investigative techniques.  *United States v. Torres,* 901 F.2d 205, 231 (2d Cir. 1990), *cert. denied sub nom., Cruz v. United States,* 498 U.S. 906 (1990).  Thus, courts have held that the affidavit must be viewed "as a whole" in a practical, common sense and realistic fashion.  *United States v. Steinberg*, 525 F.2d 1126, 1130 (2d Cir. 1975), *cert. denied*, 425 U.S. 971 (1976).  The statute does not require that all possible techniques be exhausted in fact before a wiretap may be authorized, but, rather, "[a]n affidavit describing the standard techniques that have been tried and facts demonstrating why they are no longer effective is sufficient to support an eavesdropping order even if every possible means of the investigation has not been exhausted." *United States v. Terry*, 702 F.2d 299, 310 (2d Cir.), *cert. denied sub nom. Williams v. United States*, 461 U.S. 931 (1983).

In this case, each intercept application includes an affidavit from DEA Agent Torre, who was directly involved in the investigation of the alleged narcotics trafficking conspiracy, detailing why certain attempted investigative techniques are inadequate and why other investigative techniques are not likely to be effective.  For example, according

to Agent Torre, during attempts to conduct surveillance on Jones, Jones drove
evasively to elude investigators and utilized look-outs for counter-surveillance.  Torre
Affidavit I ¶¶ 72(e), (g); Torre Affidavit II ¶¶ 123(e), (h).  Additionally, Agent Torre
averred that close surveillance of Jones was impossible because Jones could identify
several local agents and officers involved in the investigation based on a prior arrest
record.  Torre Affidavit I ¶ (f); Torre Affidavit II ¶ 123(g).  Agent Torre further averred
that the full extent of the conspiracy, including the identity of all of its accomplices and
co-conspirators, could not be readily determined from normal investigative techniques.
Torre Affidavit I ¶ 72 (c); Torre Affidavit II ¶ 123.  Particularly, Torre explained that
physical surveillance of Jones without corresponding telephone surveillance will not
reveal the full scope of the conspiracy as investigators will be unable to link new people
and addresses to the conspiracy.  Torre Affidavit I ¶ 72 (c); Torre Affidavit II ¶ 123 (c).
Also, "[s]treet activity linked to intercepted drug-related conversations . . . can enable
the identification of parties, vehicles and premises connected to the drug enterprise."
Torre Affidavit I ¶ 72(b); Torre Affidavit II ¶ 123 (b).

　　　　Torre further stated that any search and seizure alone would not reveal "the
ultimate source of the narcotics, the identity of all the players, or even all the local
storage locations, and may not result in the seizure of any additional drugs."  Torre
Affidavit I ¶ 72 (m)-(n); Torre Affidavit II ¶ 123 (l).  According to Agent Torre, limiting the
investigation to search warrants would result in the prosecution of the drug transporter,
not other members of the network or Defendants' source of supply.  Torre Affidavit II ¶
123 (l).  Further, based on his experience prosecuting drug conspiracies, Torre avers
that such search and seizure without corresponding wiretap surveillance would not

produce evidence sufficient to obtain convictions of Jones's co-conspirators.  Torre Affidavit I ¶ 72 (m); Torre Affidavit II ¶ 123 (m).  Nor would typical searches and seizures produce "the identities of drug users or couriers."  Torre Affidavit II ¶ 123 (m).  Instead, investigators would likely uncover coded names and numbers which, without telephone interception, would be unattributable to specific "distributors, buyers, wholesalers or financiers" of the organization.  Torre Affidavit I ¶ 72 (m); Torre Affidavit II ¶ 123 (m).

According to Agent Torre, interrogating parties to observed drug transactions would likewise be unavailing because it would reveal the existence of the investigation to members of the TALIBAN organization and result in changed "methods and places of their operation."  Torre Affidavit I ¶ 72 (l); Torre Affidavit II ¶ 123 (k).  Torre also stated that a grand jury investigation would be unproductive because immunized witnesses would be unlikely to cooperate.  Torre Affidavit II ¶ 123 (l).  Finally, Torre averred that, based on Torre's experience with narcotics trafficking investigations, "a cocaine dealer is extremely guarded about his source as his customers would purchase directly from the same and eliminate the dealer's profit."  Torre Affidavit I ¶ 72(k).  This statement undermines the notion that Martellus Jones and other co-defendants would willingly reveal their sources of supply to confidential informants who may use monitoring devices during controlled drug buys.  Based on these averments, it is clear that Judge D'Amico had a sufficient basis for determining that significant surveillance of Jones's co-conspirators and their vehicles, which was underway when the wiretap orders were applied for and issued, would not alone realize the objectives of the investigation.

Although Agent Torre made averments concerning the failure or impracticality of many normal investigative techniques considered during the course of this investigation,

Jones nevertheless asserts, as discussed, *Discussion, supra,* at 33, 36, that Torre fails to explain why confidential informants wearing electronic surveillance devices while executing controlled drug buys could not have retrieved the same information investigators sought from the instant wiretaps.  Molloy Affirmation ¶ 17.  In support of his contention, Jones relies on Torre's initial affidavit, in which Torre stated that confidential informants were provided with transmitters "so the CS's conversations and situations could be monitored by investigators" during controlled drug buys.  Torre Affidavit I ¶¶ 25, 40, 46.  Jones therefore argues that the Government does not explain why confidential informants could not obtain this information through consensually monitored telephone conversations.  *Id.*  There is no merit in Jones's argument.

In *United States v. Steinberg,* 525 F.2d 1126 (2d Cir. 1975), *cert. denied,* 425 U.S. 971 (1976), the defendant attacked the necessity of the wiretap application, arguing "the order did not contain the requisite full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  *Steinberg*, 525 F.2d at 1129 (2d Cir. 1975).  The court held that although the affidavit contained "little factual basis for concluding that normal investigative techniques had not suffice(d) to expose the crime . . . [w]e must view the affidavit as a whole and in a practical and common sense fashion."  *Steinberg, supra,* at 1130.

In the instant case, Detective Torre's Affidavits contain the statement that "[n]ormal investigative procedures reasonably appear to be unlikely to succeed in obtaining the evidence sought and/or would be too dangerous based upon the facts and for the reasons stated in the annexed affidavit."  Torre Affidavit I ¶ 6; Torre Affidavit II ¶

36

7.  Although this statement may not completely satisfy the "full and complete statement" requirement under 18 U.S.C. § 2518 (1)(c), the Torre Affidavits contain a lengthy analysis of the inadequacy of normal investigative techniques in the investigation, to supplement Torre's  statements.  In *United States v. Falcone,* 364 F.Supp. 877, 889 (D.N.J. 1973), *aff'd,* 500 F.2d 1401 (3d Cir. 1974) the court found that where statements in the applications concerning "normal investigative procedures" were not "full and complete statements" by themselves, information contained in the supporting affidavits sufficiently supplemented these statements to satisfy the "full and complete statement" requirement.  As such, the court finds Agent Torre's exhaustive list and analysis of normal investigative techniques sufficiently demonstrated the necessity for the wiretap order in this case.  *Steinberg, supra*, at 1130 ("We are satisfied that the Government has substantially complied with the statutory mandate").

In cases where "the telephone is routinely relied on to conduct the criminal enterprise under investigation," the Second Circuit has found wiretapping to be "particularly appropriate."  *United States v. Young,* 822 F.2d 1234, 1237 (2d Cir. 1987) (quoting *Steinberg,* 525 F.2d 1126).  In his first affidavit, Agent Torre explains that, based on his experience and participation in narcotics investigations, Torre knows that telephones, cell-phones and pagers are used to facilitate the distribution of illegal narcotics.  Torre Affidavit I ¶ 2.  Torre further stated that, based on his past experience with drug distribution networks and the facts of this case, communications concerning and arranging drug transactions will continue to occur once the eavesdropping order has been authorized.  *Id.* ¶ 76.  Specifically, Agent Torre averred that, "in recent years, narcotics dealers in the Buffalo area have made frequent use of telephones, mobile

telephones, and paging devices, often in combination with each other," *id.* ¶ 65, and that, based upon his personal experience, Torre also knows that "conventional search and seizure likely would not produce sufficient evidence on which to base drug convictions of JONES' [sic] and/or PARKER'S co-conspirators because any drug distribution records that might be obtained through the execution of a search warrant would most likely contain coded names and numbers." *Id.* ¶ 72(m).  Torre therefore represented to Judge D'Amico that the only way to obtain the enterprise's "locations, participants and conduct" of the network is through telephone interception.  Torre Affidavit I ¶ 75(n).  As such, given the wide-spread nature of the conspiracy, the court finds the wiretapping at issue to have been "particularly appropriate" in this case. *Young, supra,* at 1237.

Fisher also argues the wiretaps were unnecessary in this case because "law enforcement was also aware of the source of the cocaine and how the cocaine was distributed in the Western District of New York."  Eoannou Affirmation ¶ 53.  In his initial affidavit, Agent Torre stated "MARTELLUS JONES once told the CS that his cocaine source was in California," whom the Task Force identified as Eduardo Medina and Nelson Medina.  Torre Affidavit I ¶¶ 49, 51.  Torre further averred that "[o]ther confidential sources and cooperating defendants who are familiar with JONES and his TALIBAN GANG" have stated Parker and Jackson have "an independent cocaine source described as a Hispanic male based in Columbus, Ohio."  *Id.* ¶ 49.  This information demonstrates that members of the TALIBAN organization had more than one out-of-state source of supply.  Because the affidavits stated the known sources of supply were for Jones, Parker and Jackson and did not name sources of supply for the

other co-Defendants, Judge D'Amico could reasonably infer that the sources of supply

for the other co-Defendants were not known. As such, Torre's averment in Torre

Affidavit I that telephone surveillance was necessary for an accurate determination of all

co-conspirator identities, their buyers and respective sources of supply, was valid.

Torre Affidavit I ¶ 132.  Thus, there is no merit to Defendants' challenges to the wiretap

authorization on this ground.


**C.      Minimization**

Defendant Galarza argues that agents failed to minimize intercepted

communications as required by the terms of the warrant, New York Criminal Procedure

Law § 700.37(7) (§ 700.37(7)) and 18 U.S.C. § 2518(5) ("§ 2518(5)").  Pynn Affirmation

¶ 10.  The court's consideration of this ground for suppression is hampered by

Defendants' failure to state more precisely which call or series of calls Defendants

contend violate the minimization requirement of § 2518(5).  *Id.*  In determining

admissibility of evidence in federal court, it is well-settled that "federal law is applicable

in a federal prosecution even when there has been state involvement in the case."

*United States v. Pforzenheimer,* 826 F.2d 200, 203 (2d Cir. 1987); *see also Elkins v.*

*United States,* 364 U.S. 206, 224 (1960)*; United States v. Rowell*, 903 F.2d 899, 902

(2d Cir. 1990).  Thus, the court applies federal law governing admissibility of evidence

to its consideration of proper minimization in this case.

Upon a defendant's claim under § 2518(5)'s that minimization requirements were

not met, the court must determine whether the actions of the agents conducting the

telephonic surveillance were reasonable under the circumstances.  *Scott v. United*

*States*, 436 U.S. 128, 137 (1978).  It is the government's burden to make a *prima facie*

showing of compliance with § 2518(5)'s minimization requirements.  *United States v.*

*Rizzo*, 491 F.2d 215, 217 n.7 (2d Cir.), *cert. denied*, 416 U.S. 990 (1974); *United States*

*v. Baker*, 443 F.Supp. 526, 531 (S.D.N.Y. 1977).  Once a *prima facie* showing is made,

the burden shifts to the defendant to show that, despite a good faith compliance with the

minimization requirements, "substantial unreasonable interception of non-pertinent

conversations occurred," to the extent warranting suppression of evidence.  *United*

*States v. Ianiello*, 621 F. Supp. 1455, 1470 (S.D.N.Y. 1985), *aff'd*, 824 F.2d 203 (2d Cir.

1987).

　　　In determining the reasonableness of investigators' compliance with § 2518(5)'s

minimization requirement, the Supreme Court stated that "blind reliance on the

percentage of non-pertinent calls is not a sure guide to the correct answer. . .there are

surely cases . . . where the percentage of non-pertinent calls is relatively high and yet

their interception was still reasonable." *Scott,* 436 U.S. at 140.  In analyzing the

reasonableness of the implementation of the intercepts of investigators, the court must

consider such factors as the extent of the conspiracy and number of co-conspirators

under surveillance, the stage of the investigation, the length of the conversations being

monitored, and the use to which the telephone is typically put by the conspiracy.  *Scott,*

*supra*, at 140-42.

　　　Even in situations where the percentage of non-pertinent calls is arguably large,

interception may nonetheless be reasonable.  *Scott,* 436 U.S. at 140.  For example,

many non-pertinent calls may be short in duration or have been only one-time calls.  *Id.*

Moreover, incomplete conversations for which there was no answer or conversations

lasting less than two minutes need not be minimized, as such a short time frame is "too brief a period for an eavesdropper even with experience to identify the caller and characterize the conversation." *United States v. Capra*, 501 F.2d 267, 275-76 (2d Cir. 1974), *cert. denied*, 420 U.S. 990 (1975).  Also, many of the alleged non-pertinent calls may be ambiguous in nature or in coded language.  *Scott, supra,* at 140.  Further, conversations using coded language may make correct characterization of the conversation, and thus any opportunity to minimize, impossible until the termination of the call.  *United States v. Millan*, 817 F. Supp. 1072, 1080 (S.D.N.Y. 1993).   Under these circumstances, it would be difficult for agents to realize such calls were non-pertinent prior to their termination.  *Scott,* 436 U.S. at 141-42; *see also United States v. Bynum*, 485 F.2d 490, 501 (2d Cir. 1973) (in large scale drug conspiracy case, conversations under two minutes "would be too brief a period for an eavesdropper even with experience to identify the caller and characterize the conversation as merely social or possibly tainted"), *vacated and remanded on other grounds,* 417 U.S. 903 (1974).

In the instant case, the Intercept Orders required that all intercepted communications (1) be restricted to communications related to enumerated criminal offenses, (2) minimize interception of conversations which are not subject to the eavesdropping order, and (3) terminate thirty days from the issuance of the order or when sufficient evidence is collected to prove the extent of the narcotics organization and the identities of all its participants, whichever is sooner.  *See, e.g.,* June 22, 2005 Intercept Order for telephone number (716) 885-4287 at 3.

In this case, Defendant Galarza has failed to point to any examples that, based on the record, demonstrate a material failure to minimize warranting suppression.

Pierce does state that many intercepted calls were "of a purely personal nature such as discussing moving, going to Wal-Mart to purchase a VCR tape, and the birth of their child" (referring to Galarza and Jones's child).  Pynn Affirmation ¶ 7.  However, as the court noted in its discussion of the issue of non-pertinent, intercepted calls, *Discussion, supra,* at 39-42, non-pertinent calls may properly be intercepted under a variety of circumstances.  As stated, these calls may include non-pertinent calls under two minutes pursuant to which investigators have not had a chance to "identify the caller or characterize the conversation" and calls that are ambiguous in nature or use coded language.  *Scott,* 436 U.S. at 140; *Capra,* 501 F.2d at 275-76.  Without viewing in full the context of the intercepted conversations at issue, the court cannot find that these allegedly non-pertinent calls, which have not been specifically identified by Defendant Galarza, are a clear violation of the investigators' duty to minimize intecepted communications.  Accordingly, the court finds there has been no showing that the agents' minimization efforts  were sufficiently unreasonable thereby warranting suppression.  *See United States v. Badalamenti*, 1985 WL 2572, *7 (S.D.N.Y. 1985) (mere fact that wiretap is conducted does not justify minimization hearing "where no colorable issue has been raised by the papers").  In the absence of any evidence that a substantial number of non-pertinent calls were intercepted unreasonably, no minimization hearing is necessary.  *United States v. Cirillo,* 499 F.2d 872, 881 (2d Cir.), *cert. denied,* 419 U.S. 1056 (1974).   Although the Government has failed to meet its burden pursuant to § 2518(5) to demonstrate its compliance with statutory minimization requirements, the court finds that Defendant Galarza has also failed to meet her burden to demonstrate a violation of § 2518(5).  As noted, Defendant Galarza carries the

burden to establish the asserted non-compliance with statutory wiretap requirements. *United States v. Ianiello*, 621 F. Supp. 1455, 1470 (S.D.N.Y.), *aff'd*, 824 F.2d 203 (2d. Cir. 1987).

_____Even if the investigating agents failed to use reasonable efforts to minimize particular intercepted communications as Defendant Galarza claims, suppression of all communications intercepted pursuant to any of the challenged Intercept Orders is not the proper remedy absent a "pervasive disregard of the minimization requirement." *Cirillo, supra,* at 881 n.7; *United States v. McGuinness*, 764 F.Supp. 888, 900 (S.D.N.Y. 1991) (holding exclusion of all evidence obtained through electronic intercept order because of inclusion of some irrelevant conversations, even if irrelevant conversations were listened to in their entirety, is not necessary provided investigating law enforcement officers make good faith effort to achieve minimization).  Rather, suppression of all evidence obtained under an Title III intercept order is warranted only when, at a minimum, "a substantial number of non-pertinent conversations ha[ve] been intercepted unreasonably." [10] *Cirillo*, 499 F.2d at 881 (affirming district court's denial of defendant's suppression motion based on failure to minimize, without holding full adversary-type hearing, in the absence of evidence that substantial number of non-pertinent conversations had been intercepted unreasonably).  Defendant Galarza points to nothing to indicate a pervasive disregard of the minimization requirement in this case. As such, Galarza's motion to suppress on this ground should be DENIED.

---

[10] Bracketed material added.

## V.     Suppression of Evidence Obtained From Search Warrants

Defendants Shauncey Galarza and Pierce also challenge evidence obtained from

the search warrants in this case.  The court addresses Defendants' challenges in order.

### A.     Defendant Galarza's challenge to evidence obtained pursuant to the search warrant executed on July 12, 2005 at her residence, 271 Kenmore Avenue in Tonawanda.

Defendant Galarza argues that evidence obtained pursuant to the warrant for

Galarza's residence at 271 Kenmore Avenue in Tonawanda, New York, must be

suppressed.  Pynn Affirmation ¶ 11.  Specifically, Galarza contends that the phone calls

monitored by law enforcement which provide part of the probable cause basis for the

search warrant directed to Galarza's residence were calls made from mobile phones

and as such, "could have been placed or received anywhere."  *Id.* ¶ 18.  Galarza further

asserts that the Government's reliance on a conversation between Defendant Jones

and Shauncey Galarza, his wife, during which he instructs her to "grab that and put it all

together and . . . make it all in one so I mean it ain't everywhere just in case.  I need to

open that shit up and put it down the toilet just in case if it happen," is insufficient to

establish probable cause to search Galarza's residence, even when considered with

other evidence.  Pynn Affirmation ¶¶ 16, 19.  Finally, Galarza argues there is no

evidence to support the investigators' belief that Daniel Piccuilla, an acquaintance of

Jones whose information Agent Bongiovanni relies upon in support of the search

warrant, is involved in drug trafficking.  Pynn Affirmation ¶¶ 17, 19. [11]  Galarza contends

the only other evidence the agent relied upon to justify the search warrant is Agent

---

[11] Specifically, Galarza maintains that Jones's request that Piccuilla call the "Spanish boys for me" does not establish Piccuilla's involvement in drug trafficking.  Pynn Affirmation ¶ 17.

Bogiovanni's "expert opinion" of what is usually discovered at drug trafficker's residences; however, according to Galarza, an agent's "expert opinion" is insufficient, by itself, to establish probable cause. *Id.* ¶ 19.  In opposing Galarza's contention, the Government argues that Agent Bongiovanni's affidavit supports a finding of probable cause for the search warrant and contends that, assuming, *arguendo,* the agent's affidavit lacked the requisite probable cause required for the warrant's issuance, "the warrant was not so facially lacking in probable cause as to preclude the executing officer's good faith reliance thereon."  Government Response at 38 (relying on *United States v. Leon,* 468 U.S. 897, 922-23 (1984)).

The Supreme Court has established the "totality of the circumstances" test for the determination of probable cause under the Fourth Amendment with regard to a search warrant.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The issuing judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Id.*  Further, resolution of marginal cases should be determined by the preference afforded to warrants. *United States v. Smith,* 9 F.3d 1007, 1012 (2d Cir. 1993).  An affidavit in support of an application for an eavesdropping warrant demonstrates probable cause when it sets forth facts which are sufficient, under the circumstances, to indicate a fair probability of criminal activity.  *United States v. Rowell,* 903 F.2d 899, 902 (2d Cir. 1990) (citing *Gates, supra,* at 236).  Further, a judge's determination of probable cause should be given great deference by a reviewing court.  *Gates, supra*, at 236; *United States v.*

*Nichols*, 912 F.2d 598, 602 (2d Cir. 1990).  The resolution of close cases should be determined by the preference accorded to warrants.  *Smith*, 9 F.3d at 1012.

The court finds that, under the totality of the circumstances standard enunciated by *Gates*, *supra,* the warrant issued for 271 Kenmore Avenue was based upon probable cause.  Specifically, the court disagrees with Galarza's assessment of the evidence in the affidavit, and finds, contrary to Galarza's position, the conversation between Jones and Galarza regarding collecting items so Jones can "put it down the toilet, just in case" fairly points to possession by Jones and Galarza of illegal drugs.  The court further notes that Galarza fails to mention Jones's earlier instructions to  Galarza in that same conversation, that "[y]ou know that cabinet I always be going in . . . you gotta look up in the second shelf and it is behind that and put all that together."  Bongiovanni Affidavit ¶ 33(A).  In the background information provided in paragraphs 30-32 of his affidavit, Agent Bongiovanni explained why he believed that  271 Kenmore Avenue is the primary residence of Jones and Galarza.  As such, and in context, the court finds Jones was directly referring to a location within Galarza's residence, 271 Kenmore Avenue, where drugs were stored.  Therefore, the fact that this call may have been placed from Jones's mobile phone is irrelevant to whether it was reasonable to believe there was grounds to search the Jones-Galarza residence for narcotics.

In addition to the incriminating conversations between Jones and Galarza intercepted by law enforcement, Agent Bongiovanni averred that, based on his training and experience, narcotics, narcotic proceeds, records and weapons are typically found at drug traffickers' residences.  Bongiovanni Affidavit ¶ 34.  Further, in a schedule of items to be seized attached to the affidavit, Bongiovanni lists "[b]ooks, records, receipts,

notes, ledgers, airline tickets, money orders and other papers relating to the

transportation, ordering, sale and distributions of controlled substances" among the

items for which authorization should be given to search and seize.   In *United States v.*

*Fama, supra,* the Second Circuit held

> While probable cause to arrest does not necessarily give rise
> to probable cause to search . . . [the affiant] had stated in the
> affidavit that his ten year experience as a DEA agent had
> taught him the major drug traffickers frequently maintain at
> their homes large amounts of cash, drugs, books, ledgers,
> and other documents evidencing their criminal activities.  A
> number of cases have ruled that an agent's expert opinion is
> an important factor to be considered by the Judge reviewing
> a warrant application. *** Thus it should also be a factor
> contributing to objective good faith. [12]

*United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985) (internal citations omitted); *Id.*

¶ 106(h) .

Based on the holding in *Fama, supra,* that an agent's expert opinion that drug

traffickers typically maintain "large amounts of cash, drugs, books, ledgers, and other

documents evidencing their criminal activities . . . should be considered a factor

contributing to objective good faith," in believing probable cause had been established,

and because the challenged search warrant authorized the executing agents to search

not only for quantities of cocaine, but also for "books, records, receipts, etc." at the

Jones-Galarza residence at 271 Kenmore Avenue in Tonawanda, the court finds the

absence of any specific information connecting suspected drugs to the residence in the

agent's supporting affidavit does not invalidate the search warrant.  *See Fama,* 758

F.2d at 838.  Judge D'Amico thus properly inferred, relying on Agent Bongiovanni's

---

[12] Bracketed material added.

experience as stated in the affidavit, that Jones's residence would yield evidence of narcotics trafficking.  *Fama,* 758 F.2d at 838 (court considered opinion of agent employed by the DEA for 10 years that "major drug traffickers frequently maintain at their homes large amounts of cash, drugs, books, ledgers and other documents evidencing their criminal activities" a factor contributing to "objective good faith")*; United States v. Dillon,* 810 F. Supp. 57, 62 (W.D.N.Y. 1992) (court found evidence uncovered by canine sniff in Buffalo airport and magistrate judge's reliance on Buffalo police officer's six-year experience as a DEA agent reasonable to support probable cause determination underlying warrant application for Defendant's residence).  As *Fama* supports issuance of the search warrant directed to a narcotics trafficker's home, Galarza's motion directed to the search of her residence must fail.

Finally, assuming, *arguendo,* that Bongiovanni's affidavit lacked the requisite probable cause, Galarza fails to explain why the officer's reliance on the warrant does not qualify under the good faith exception to the exclusionary rule as stated in *United States v. Leon,* 468 U.S. 897, 922-23 (1984).  Galarza's motion to suppress should, therefore, be DENIED.

**B.     Defendant Karen Pierce's challenge to evidence obtained pursuant to the search warrant executed on July 11, 2005 at 204 Bird Avenue in Buffalo, New York**

Defendant Pierce challenges the sufficiency of the search warrant issued for 204 Bird Avenue in Buffalo on the ground that there is no evidence that the undersigned issued the warrant, as the warrant was not signed by the judicial officer. Pieri Affirmation II ¶¶ 4-7.  The Government acknowledges that the warrant was

unsigned, but contends "there is ample evidence from the face of the warrant itself that it was reviewed by Magistrate Judge Foschio."  Government Response to Motion to Suppress at 1.  Specifically, the Government asserts there are three areas on the face of the warrant and one at the end of the attachment where the undersigned initialed the warrant and used the abbreviation USMJ "for United States Magistrate Judge."  *Id.* at 2.  The Government notes that for a total of 19 search warrants issued in this case, the same affidavit was signed by the undersignedin support of the search warrants.  *Id.*, FN3.  Finally, the Government contends the application and affidavit for the search warrant for 204 Bird Avenue was executed by the undersigned.

According to the Government, these facts are significant because "the language contained in the "WHEREFORE" clause of the affidavit . . . believes that probable cause exists for and, therefore, requests that a search of the locations referenced in the affidavit (including 204 Bird Avenue) be searched."  *Id.* at 2.  The Government argues the undersigned's signature on the affidavit demonstrated the court's intent to issue the requested warrant based upon Agent Bongiovanni's averments.  *Id.*  The Government therefore argues it was the court's intention to sign the search warrant for 204 Bird Avenue in Buffalo but that the failure to do so does not vitiate the warrant.  *Id.*

The Government alternatively argues that, notwithstanding the absence of a signature, it was reasonable for agents to rely on the warrant in "good faith", pursuant to *United States v. Leon,* 468 U.S. 897 (1984).  The Government relies on *Massachusetts v. Sheppard,* 468 U.S. 981 (1984), wherein the Supreme Court refused to suppress evidence from the search based on a clerical defect made by the issuing Judge.  Government Response to Motion to Suppress at 4.  Finally, the Government argues the

purpose of the exclusionary rule is to deter unlawful police searches, "not to punish errors of Magistrates and judges," quoting *Illinois v. Gates*, 462 U.S. 213, 263 (1983). *Id.* Thus, the Government maintains because the undersigned, the Magistrate Judge who reviewed the search warrant application, affidavit and warrant indicated with handwritten initials on the face of the warrant an intent to sign the warrant, and "the agents acted reasonably," the warrant should be sustained, and the evidence obtained pursuant to the warrant is not subject to suppression.  Government Response to Motion to Suppress at 4.

In *United States v. Turner,* 558 F.2d 46, 51 (2d Cir. 1977), defendant similarly argued that the warrant was not "issued" pursuant to Rule 41 because the issuing magistrate failed to personally sign the warrant, instead commissioning a Customs Agent to affix the judge's signature at the judge's direction.  The *Turner* court held suppression for a Rule 41 violation is justified where there has been (1) "an intentional and deliberate disregard of a provision in the Rule"; (2) where a defendant has been prejudiced by the violation such that the search "might not have occurred" or "would not have been so abrasive if the Rule had been followed," and/or (3) where a defendant was "deprived of a substantial procedural safeguard" provided for in Rule 41."  *Turner, supra,* at 52-53.  Further, the court concluded it must be "wary in extending the exclusionary rule in search and seizure cases to violations of Rule 41 alone."  (internal quotation omitted).  *Turner, supra,* at 52 (citing *United States v. Burke*, 517 F.2d 377, 386 (2d Cir. 1975)).  Ultimately, in *Turner,* the court found because the magistrate determined there was probable cause for the search and authorized the issuance of the warrant prior to the search, the magistrate's failure to sign his name to the warrant did not invalidate the warrant.  *Turner, supra*, at 50 ("As long as the magistrate in fact

performs the substantive tasks of determining probable cause and authorizing the issuance of the warrant, the [Fourth] [A]mendment is satisfied.") Other circuits have also found that a magistrate judge's failure to sign a search warrant does not, by itself, invalidate the search warrant. *United States v. Lipford,* 203 F.3d 259, 269-70  (4th Cir. 2000); *United States v. Kelley,* 140 F.3d 596, 604 (5th Cir. 1998), *cert. denied*, 525 U.S. 908 (1998).  *See also Burke v. Town of Walpole,* 405 F.3d 66, 78 (1st Cir. 2005) (unsigned arrest warrant).

In the instant case, the wherefore clause in the affidavit which accompanies the search warrant states the undersigned has found probable cause to search premises including 204 Bird Avenue.  Additionally, the undersigned's review and approval of the warrant and related search is evident from the three places on the face of the warrant and one at the end which contain the undersigned's initials and the abbreviation "USMJ" for United States Magistrate Judge.  Moreover, neither the text of the Fourth Amendment or Fed.R.Crim.P. 41, governing the issuance of federal search warrants issued in person, rather than one issued telephonically or pursuant to Fed.R.Crim.P. 41(e)(3), require that the issuing judicial officer actually sign the warrant. [13] Significantly, the Fourth Amendment states that a warrant "shall issue" upon probable cause established under oath; Rule 41(d) requires the magistrate judge "must issue the warrant if there is probable cause to search . . .."  In the instant case, Pierce does not dispute (1) that the applicant for the warrant personally appeared before the undersigned and gave an oath in support of the search warrant, (2) that the

---

[13] Fed.R.Crim.P. 41(e)(3) requires, in the case of a telephonic search warrant, that the issuing judicial officer sign the original warrant promptly after its issuance.

undersigned initialed the face of the warrant, and (3) contemporaneously signed eighteen other similar search warrants based on the same affidavit.  Under these circumstances, there can be little doubt that the warrant was issued by the court, and Defendant's argument should be rejected.

Where, as in *Sheppard, supra,* such an apparently inadvertent error was made by the issuing judge, and not the officers who executed the search, the evidence will not be suppressed because to do so would undermine the purpose of the Exclusionary Rule, which is "to deter unlawful searches by police, not to punish the errors of Magistrates and judges."  *Illinois v. Gates,* 462 U.S. 213, 263 (1983).  Based on the foregoing, Defendant Pierce's motion to suppress evidence derived from the search of 204 Bird Avenue in Buffalo should be DENIED.

## CONCLUSION

Based on the foregoing, Defendants' motions (Doc. Nos. 61,63, 64, 65, 69) are GRANTED, in part, and DENIED, in part, insofar as they seek non-dispositive relief. Defendants' motions to suppress should be DENIED.

SO ORDERED, as to Defendants'          Respectfully submitted as to
non-dispositive motions,                        Defendants' motions to suppress,


 /s/ *Leslie G. Foschio*                              /s/ *Leslie G. Foschio*
_____          _____
    LESLIE G. FOSCHIO                              LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE       UNITED STATES MAGISTRATE JUDGE


DATED:        June 16, 2006
              Buffalo, New York

52

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Government and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      June 16, 2006
            Buffalo, New York

53